UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANDREW BOOK v. WAYNE MOULTON, et al          3:05-CV-875
                                             (TJM/DEP)
_____

ANDREW BOOK, Plaintiff *Pro Se*
FRANK W. MILLER, ESQ., for Defendants

### ORDER and REPORT-RECOMMENDATION

Pursuant to the Order of the Honorable Frederick J. Scullin, Jr. dated January 27, 2006, regarding allegations of attorney misconduct, this court held an in-person evidentiary hearing on May 31, 2006. Although plaintiff was given substantial notice of the hearing date and time by this court's order of May 5, 2006 (Dkt. No. 56), plaintiff did not appear at the hearing. Instead, plaintiff filed a letter on May 26, 2006, stating that he wished to withdraw all claims in this action and would have no further communications with the court or with defense counsel. (Dkt. No. 69). Defense counsel Frank Miller, Esq., the subject of plaintiff's complaint, appeared at the hearing and offered witness testimony as well as documentary evidence in his defense.

For the following reasons, this court finds that the plaintiff's allegations against Attorney Miller are ***completely baseless and totally without merit***.

### DISCUSSION

1. **Background**

This action was filed on July 14, 2005. (Dkt. No. 1). The case was assigned to Senior Judge Thomas J. McAvoy and Magistrate Judge Peebles.[1] Plaintiff filed an amended complaint on September 14, 2005. (Dkt. No. 3). In the amended civil rights complaint, plaintiff alleges that defendants Moulton and Lavore, Tioga County

---

[1] The established procedure in the Northern District of New York is to dually assign all civil actions to a District Court Judge and a Magistrate Judge. The Magistrate Judge assigned to the case is responsible for handling all the non-dispositive matters that arise in the action, and the District Court Judge handles all the dispositive matters, including the trial.

Sheriff's Deputies, violated plaintiff's constitutional rights during the course of a traffic stop. Plaintiff claims that in an effort to harass and humiliate plaintiff, they forced him to exit his car, searched him in a rough and unnecessary manner, physically and verbally abused him, handcuffed him, and forced him to sit in the back of a hot patrol car without ventilation in an effort to coerce plaintiff into consenting to the search of his car. Plaintiff alleges that he was ultimately released and allowed to leave the area. Finally, plaintiff claims that the defendants' behavior was taken pursuant to an official policy of the Tioga County Sheriff's Department.

Defendants, represented by Frank W. Miller, Esq., filed their answer on October 11, 2005. (Dkt. No. 14). In defendants' answer, in addition to denying the allegations in the amended complaint, defendants asserted a series of ten affirmative defenses. Answer at ¶¶ 7-16. On October 28, 2005, plaintiff made a motion to strike the affirmative defenses contained in the answer. (Dkt. No. 22).

Senior District Judge McAvoy's order denying plaintiff's motion to strike the affirmative defenses was filed on December 6, 2005 *at 1:40 p.m.* (Dkt. No. 31). On December 6, 2005 *at 2:50 p.m.*, defendants electronically filed their response in opposition to plaintiff's motion to strike affirmative defenses. (Dkt. No. 32). Clearly, Judge McAvoy did not consider any of defendants' papers in his decision, since his decision was filed before the defendants' response was received by the court.

On December 22, 2005, plaintiff wrote a letter to the Clerk of the Court, complaining that Attorney Frank Miller had perpetrated some fraud on the court by submitting a false, fraudulent, and altered document in his response to plaintiff's motion to strike. (Dkt. No. 38). The allegedly "fraudulent" document was marked Exhibit B to defendants' response and consisted of a July 27, 2005 Memorandum, written by defendant Deputy Moulton to his supervisor, Captain Paul Rhodes. Plaintiff's December 22, 2005 letter requested that the court investigate plaintiff's allegations of attorney misconduct against Attorney Miller. Plaintiff's *only* apparent

2

basis for alleging that this document was fraudulent or "altered" was that *the type font on some of the lines at "key" portions of the memorandum was a different size than in the rest of the memorandum*.

Plaintiff's December 22, 2005 letter was forwarded to then-Chief Judge Frederick J. Scullin, Jr. pursuant to LOCAL RULE 83 for action on plaintiff's allegations. On January 27, 2006, Judge Scullin referred the plaintiff's letter to me to investigate plaintiff's allegations and advise the court what disciplinary action, if any, should be taken. (Dkt. No. 47). Defense counsel requested the opportunity to respond to the allegations. (Dkt. No. 46). Judge Scullin's order provided that defendants' request to respond to plaintiff's complaint be denied until this court decided whether a response would be necessary and what form that response would take. (Dkt. No. 47 at 2). Plaintiff then filed a follow-up letter of complaint on February 1, 2006. (Dkt. No. 48).

After plaintiff's December 22, 2005 letter, a discovery dispute arose which resulted in a telephone conference with Magistrate Judge Peebles, the plaintiff, and Attorney Miller on January 5, 2006. The conference was recorded, and a transcript of that conference has been filed, but is not available for electronic viewing. (Dkt. No. 49). On January 11, 2006, Magistrate Judge Peebles issued an order, stating that plaintiff had not followed the Local Rules of this district in failing to confer with defense counsel in good faith regarding any perceived discovery disputes. (Dkt. No. 43). Magistrate Judge Peebles also noted that plaintiff directed several insults toward defense counsel and that plaintiff's "conduct made it difficult for the court to maintain an orderly proceeding." *Id.* at 3. Magistrate Peebles also noted that plaintiff "disconnected" from the conference before its completion, and stated that if that disconnection had been intentional, that type of conduct would not be tolerated and could result in sanctions, including dismissal of his action. *Id.* In the order, plaintiff was reminded of his responsibility to conduct himself civilly. This court agrees that

3

the fact that plaintiff is pro se ***does not excuse him*** from behaving properly before the court and with opposing counsel.

On January 17, 2006, plaintiff filed a motion before Senior Judge McAvoy to disqualify Magistrate Judge Peebles. (Dkt. No. 44). In addition, plaintiff appealed Magistrate Judge Peebles's January 11, 2006 discovery order. (Dkt. No. 45). The court has included this statement of the procedural history of this case to illustrate that most of the delay that has occurred in this action is due to plaintiff's own behavior, and that by late January of 2006, there were ***four*** judges from this district working on motions relating to this plaintiff. All but two of the docket entries for the ***entire month*** of February 2006 involved the discovery appeal and the motion to disqualify Magistrate Judge Peebles. (Dkt. Nos. ***49-54***).

I did not receive Judge Scullin's order immediately after it was issued, but upon receipt of the order, I issued an order, allowing a response to plaintiff's allegations and setting a deadline for attorney Miller to file that response. (Dkt. No. 56). On March 29, 2006, Attorney Miller filed his response to plaintiff's misconduct allegations. (Dkt. No. 61). The court notes that there continue to be discovery disputes, and it appears from the docket sheet that ***plaintiff's*** failure to respond to defendants' discovery request has now resulted in defendants' motion to compel discovery before Judge Peebles, filed by permission of the court. (Dkt. Nos. 63-64).

On May 5, 2006, I scheduled the hearing to take evidence on plaintiff's misconduct complaint against Attorney Miller. (Dkt. No. 65). The hearing was scheduled for May 31, 2006 at 1:30 p.m. *Id.* Prior to the hearing, plaintiff filed letters requesting the ***appearance and testimony*** at the hearing of Magistrate Judge Peebles and Senior District Judge McAvoy. (Dkt. Nos. 66, 67). Both Judges declined to appear. On May 26, 2006, plaintiff filed two letters requesting withdrawal of his action and stating that he would ***not be appearing*** at the May 31, 2006 hearing on the

4

attorney misconduct issue.[2] (Dkt. Nos. 68, 69). Regardless of plaintiff's letters requesting termination of the action and his failure to appear for the hearing on May 31, 2006, this court finds that it was important to continue with the hearing because the issues in the hearing are ***separate from the merits of the action*** and involve an allegation of misconduct by an attorney and officer of the court. It is important that Attorney Miller have the opportunity to defend against these allegations and that the court make ***specific findings on the record***.

## 2.    Evidence at the May 31, 2006 Hearing

Plaintiff's complaint involves a July 27, 2005 memorandum, written by defendant Deputy Moulton to Captain Rhodes outlining the facts surrounding plaintiff's traffic stop, submitted as Exhibit B to defendants' response to plaintiff's motion to strike. It was also received in evidence at the hearing as Exhibit B for consistency. Plaintiff notes that some of the lines appear to contain smaller type than other lines. Plaintiff leaps from this fact to the assumption that the "cause" of this change in size is "alteration", the further assumption that because of this "alteration" the document must somehow be fraudulent, and the third assumption that Attorney Miller's inclusion of this document in his papers must somehow be a fraud on the court.

Defense counsel appeared at the hearing and presented his own testimony as well as the testimony of Deputy Sheriff Wayne Moulton, Deputy Sheriff Francis Lavore, and Captain Paul Rhodes. Five documents were also received in evidence,

---

[2] The court notes that these letters followed various belligerent telephone calls to the Clerk's Office, complaining that his letters requesting Judge Peebles's appearance at the hearing had not been filed immediately for some inappropriate reason. The court notes that the letter in question, although "addressed" to the Clerk of the Court, was sent directly to Judge Peebles's chambers. Thus, it is not the Clerk's fault that the document was not filed immediately upon receipt. It is not the responsibility of the Judge's chambers to file papers. It is the party's responsibility to direct the papers to the proper address. In any event, it appeared from the letter that a copy could have been sent to the Clerk. Thus, any delay in filing the document was inadvertent, and in no way showed bias against plaintiff.

including the Memorandum in question; plaintiff's two complaint letters; and affidavits by defendant Moulton and Attorney Miller. Defendants' Exhibits A-E.

Deputy Sheriff Moulton testified that on June 13, 2005, he was involved in plaintiff's traffic stop. Defendant Moulton stated that he observed plaintiff in his car, passing two other vehicles in a "no passing" zone. Defendant Moulton stopped all three vehicles: plaintiff's car and the other two vehicles. Defendant Moulton interviewed the drivers of the other two vehicles "as witnesses". According to the memorandum, one of the other motorists was apparently annoyed at plaintiff's driving and told defendant Moulton that she had said to herself, "'Where's a cop when you need one [sic]'". While defendant Moulton was speaking with these two individuals, plaintiff exited his car. It was at this time that defendant Lavore drove by and asked defendant Moulton if he needed help. He accepted defendant Lavore's offer of assistance. Plaintiff was issued a ticket for passing in a no passing zone. Ultimately, the record shows that plaintiff was found guilty of this traffic offense.[3]

Prior to the issuance of the ticket, however, defendant Lavore testified that plaintiff became so belligerent that, for safety reasons, the officers handcuffed plaintiff, and then asked if they could search his car. The car was searched while plaintiff was handcuffed and sitting in one of the police officer's cars. After the officers determined that all plaintiff's documentation was in order, plaintiff was given a ticket and allowed to leave. Captain Rhodes testified that later that day, defendants Moulton and Lavore told him about the incident and stated that plaintiff would probably come to the office to make a complaint. Plaintiff did arrive at the Sheriff's Department, and Captain Rhodes instructed Lieutenant Travis to meet with plaintiff.

Lieutenant Travis took plaintiff into a conference room, and Captain Rhodes stated that although he did not hear the conversation exactly, he could hear loud

---

[3] The certificate of conviction was included in defendants' response to plaintiff's motion to strike. (Dkt. No. 32, Ex. C).

6

voices.  Lieutenant Travis finally asked plaintiff to leave, but plaintiff continued to talk about police bias.  Lieutenant Travis escorted plaintiff to the outside lobby, and plaintiff left but returned shortly and began to give the women working behind the desk a difficult time.  Lieutenant Travis returned and this time physically escorted plaintiff out of the building.  Plaintiff apparently drove from one parking lot to another, when he confronted another Deputy who was completely unrelated to the traffic stop.

Captain Rhodes testified that he was later telephoned by the Chairman of the Tioga County Legislature, Martin Borko.  Mr. Borko wanted the Sheriff of Tioga County, Sheriff Howard to attend a meeting with Mr. Borko and plaintiff regarding the allegations of "racial profiling."  Captain Rhodes testified that Sheriff Howard did attend the meeting and that when Sheriff Howard returned, he told Captain Rhodes that everything was "ok."  However, Captain Rhodes stated that shortly thereafter, there was an article in the newspaper about this incident.  The article accused the Sheriff's Department of "racial profiling".  The article also stated that plaintiff was going to file a federal law suit regarding this incident.

Captain Rhodes testified that he asked Deputy Moulton to write the July 27, 2005 memorandum in order to articulate the facts of the incident.  Defendant Moulton testified that he wrote the memorandum on one of the office computers and after writing the memorandum, gave it to Captain Rhodes.  Defendant Moulton stated that after the beginning of this lawsuit, he gave a copy of the memorandum to Attorney Miller.  Attorney Miller asked defendant Moulton to review the memorandum, and defendant Moulton stated that the memorandum filed in this action was the same memorandum that he wrote on July 27, 2005.  Captain Rhodes also testified that he did not see any difference between defendant Moulton's original memorandum and the memorandum submitted as Exhibit B to Attorney Miller's papers in response to plaintiff's motion to strike.  *See* Defendants' Hearing Ex. B.  There was nothing

7

irregular or unusual about it. Captain Rhodes also stated that because this was an internal memorandum, defendant Moulton was not required to sign the document.

Defendant Moulton testified that the officers have an area at the police station in which there are computer terminals for their use. The July 27, 2005 memorandum was written on one of these computers. Defendant Moulton testified that he did not change the font of the letters in the memorandum, and that he would not even know how to change the font. Defendant Moulton did state that there had been some discussions about the quality of the computer equipment in his office. The court asked defendant Moulton to review the lines and words that appear to be smaller than other words in the memorandum, and defendant Moulton testified that *all the information* contained in any of the sentences *was accurate*, regardless of their appearance. Defendant Moulton also stated that he discussed the contents of the memorandum with Attorney Miller and had no reservations about giving it to his attorney or about having the document submitted to the court.

Attorney Miller testified on his own behalf. He gave a brief overview of the case and stated that when plaintiff filed his motion to strike affirmative defenses, he interpreted the motion as similar to one for summary judgment. Because defendants claim in this action that their conduct was in good faith and protected by qualified immunity, Attorney Miller wished to include the memorandum (Ex. B) that defendant Moulton wrote to Captain Rhodes summarizing the incident. Attorney Miller stated that he believed that the memorandum would support the defendants' assertion that any actions they took were justified and only in response to plaintiff's allegedly erratic, belligerent, and potentially threatening behavior.

Attorney Miller stated that he believes that the statements contained in the memorandum (Ex. B) were accurate based upon his interviews with the defendants, and that there is no indication that the memorandum was "doctored" in any way. Attorney Miller also pointed out that in his letters of complaint, plaintiff never

8

claimed that the information contained in the memorandum was inaccurate in any way, nor did he state what information he believed was changed.

Finally, Attorney Miller argued that plaintiff deserves to be sanctioned for his actions in this case. Attorney Miller stated that this incident, including the claims against Attorney Miller personally have been made public. Attorney Miller has had to contact his malpractice insurance carrier and has had to discuss the facts involved in this complaint. He stated that there were additional articles in the newspaper regarding this incident, and that he has spent 15-20 hours of his time defending himself against this claim of misconduct.

## 3.    **Findings**

At the conclusion of the hearing, I found that, based on all the evidence, ***plaintiff's allegations against Attorney Miller are totally baseless***. I also believe that it is important to write this decision so that my findings will be clearly on the record. While it is true that the font on some of the lines of the memorandum appears to be smaller than on other lines, there is absolutely ***no basis whatsoever for concluding that this was the result of some "alteration"*** or that the memorandum was anything other than defendant Moulton's statement of facts surrounding the incident with plaintiff. Of course, this court does not make findings regarding any substantive issue in this case, only that this is the same document authored by defendant Moulton, given to his supervisor Captain Rhodes, and given to Attorney Miller. All the witnesses stated under oath that the information in the document has not been changed in any way, and I find their testimony to be completely credible.

It is not unusual for documents that are printed from a computer or scanned by a scanner or a fax machine to contain minor distortions in the lines of the document. A dramatic example of what can happen when a document is improperly scanned appears on the docket of this case. Document 67 is plaintiff's letter requesting the appearance of Judge Peebles at this hearing. Because plaintiff is pro se, and does not

9

have access to the court's electronic filing system, all plaintiff's documents must be scanned into the computer by a Clerk's Office employee. This document had to be scanned *twice* because the second page of the letter appears to stop at the second line, and the third line is an upside down mirror image of the second line that has been elongated throughout the page. (Dkt. No. 67). This court has seen similar variations in "font" size in ordinary letters filed by attorneys in other cases. A vivid example has been attached to this recommendation as Exhibit 1. Exhibit 1 is a letter, written by an attorney in a completely unrelated case. A review of the letter shows that it appears that portions of the letter contain larger font than other portions, beginning with this court's address. Some of the letters appear to be "elongated."

There is simply no evidence that whatever difference in type font occurs in the memorandum in this case was anything more that an error or distortion in printing the document. Plaintiff did not even have the courtesy to appear at the hearing, notwithstanding the serious charges that he made against Attorney Miller. Throughout this case, plaintiff appears to have conducted himself in an inappropriate, belligerent, and uncivil manner, not only with defense counsel, but with Magistrate Judge Peebles and court staff. Judge Peebles cautioned plaintiff in the court's January 11, 2006 discovery order that he must follow the appropriate standards of civility. Plaintiff believes that *he* should be treated with respect, but apparently does not feel that anyone else deserves the same respectful treatment.

In plaintiff's letters requesting the appearances and testimony of Judge McAvoy and Magistrate Judge Peebles, plaintiff *continued his unacceptable behavior* by accusing the judges of conspiring with defendants to harm plaintiff's case. Again, plaintiff makes *completely unsupported and totally baseless allegations*. Finally, after making these allegations and requesting an investigation, plaintiff believes that he can just "drop" everything and refuse to communicate further with the court. Plaintiff's final letter continued his unfounded accusations against the court itself. He

states that he is withdrawing his case upon the advice of a lawyer who specializes in "civil litigation". Plaintiff states that he is withdrawing the case "due to the Court's animosity and bias against me." (Dkt. No. 69).

If anything, the court has been extremely patient with this plaintiff as it is with *all* pro se litigants. The amount of court time that has been spent on plaintiff's case is substantial. As stated above, plaintiff had four judges working on his case at the same time. Judge Scullin immediately referred plaintiff's allegation against counsel for investigation. The fact that a judge rules against a litigant does not show bias or animosity. Plaintiff apparently believes that when the court rules against him it is because the court is somehow *favoring* his opponent. That allegation could not be further from the truth.

As stated above, the findings resulting from this hearing are separate from the merits of the underlying action. The only issue referred to me was the complaint against Attorney Miller, and I have found that the complaint against defense counsel is totally baseless and meritless. A finding regarding the merits of the actual complaint in this lawsuit will have to await another proceeding. A serious concern that the court has after this hearing is that such a baseless and unwarranted complaint has caused such a *substantial waste of time, money, and effort*, both by counsel and by the court. Attorney Miller has clearly spent a great deal of time and effort defending this complaint, the officers have had to spend time coming to and testifying at the hearing, and Attorney Miller has had to contact his insurance company and discuss matters pertaining to a pending action. The court has also spent a great deal of time dealing with plaintiff's unfounded complaint. All allegations of misconduct are taken seriously, and the only individual who has apparently suffered no consequences as the result of his irresponsible actions is the plaintiff. Thus, the court will discuss sanctions.

11

## 4.    Costs and Sanctions

Attorney Miller also argued that plaintiff's conduct deserves to be sanctioned. The court has inherent power to sanction improper and bad faith conduct of both attorneys and parties apart from any of the statutory or rules provisions providing for sanctions. *Chambers v. NASCO*, 501 U.S. 32 (1991). This power arises from the necessity that courts be able to manage their own affairs so as to achieve "the orderly and expeditious disposition of cases, and is appropriately used where there is *"clear evidence"* that the attorney's or party's actions are taken for reasons of harassment, delay, or other improper purpose. *Revson v. Cinque & Cinque*, 221 F.3d 71, 78 (2d Cir. 2000). Inherent power may be used when the conduct at issue is not covered by one of the other sanctioning mechanisms. *Chambers*, 501 U.S. at 50.

The standard for imposition of sanctions under the court's inherent power is similar to the standard for sanctions under 28 U.S.C. § 1927.[4] *Revson*, 221 F.3d at 79. In order to impose sanctions under either authority, the court must find that (1) the offending party's claims were entirely meritless, and (2) the party acted for improper purposes. *Id.* (citing *Agee v. Paramount Communications, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). However, the intentional advancement of a baseless contention has held to be indicative of bad faith. *Hudson Motor Partnership v. Crest Leasing Enterprises, Inc.*, 845 F. Supp. 969, 979 (E.D.N.Y. 1994). The court may conclude that an action was taken with bad faith if it is completely without merit. *Revson*, 221 F.3d at 79.

In this case, this court has already determined as a result of this hearing that plaintiff's actions were *completely baseless and without merit*. Plaintiff has no problem making unfounded accusations against opposing counsel or the court.[5] Thus,

---

[4] Unlike sanctions imposed under the court's inherent power which may be assessed against attorneys and parties, sanctions under section 1927 are only available against attorneys.

[5] The court would point out that in plaintiff's motion to disqualify Magistrate Judge Peebles, plaintiff made a variety of accusations of bias and improper behavior, which were later

the court also finds that plaintiff's actions were taken in bad faith, and that sanctions for his egregious conduct are appropriate. The clear lack of merit to plaintiff's accusations, the waste of the court's, counsel's, and witnesses' time, and the possible unwarranted damage to defense counsel's reputation are sufficient reasons to sanction plaintiff in this case.

However, in addition to these reasons, the court must include plaintiff's lack of respect for not only the defense counsel but for the court, shown in part by his mistreatment of court personnel when plaintiff has any contact with the court and by his failure to even attend the hearing that *he caused to occur*. Plaintiff was warned by Magistrate Judge Peebles that plaintiff's lack of civility to opposing counsel and to the court could result in sanctions imposed against him, including dismissal of his case. (Dkt. No. 43 at p.4). Plaintiff appears to believe that after beginning this entire process, it was appropriate for him to simply state that he was withdrawing his claims and would have no further contact with the court and defense counsel. It is for these reasons that this court finds sanctions to be appropriate.

However, before imposing any kind of sanctions, the law is clear that the individual against whom sanctions are being considered must have notice and an opportunity to be heard. *Mickle v. Morin*, 297 F.3d 114, 126 (2d Cir. 2002)(citing *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996). Additionally, with respect to the amount of sanctions, at the hearing, Attorney Miller stated that he spent approximately 15-20 hours defending this complaint, however, there have been no itemized time sheets, and there has been no hourly rate requested.

Thus, prior to recommending the award of a specific amount of attorneys fees and/or other monetary sanctions, this court will recommend that plaintiff be ordered to show cause why sanctions should not be imposed upon him for the above conduct. In

---

found to be without merit by Senior Judge McAvoy. (Dkt. Nos. 44, 54).

addition, Attorney Miller may submit to the court a complete request for attorneys fees, indicating the hours spent in defending against plaintiff's complaint and an hourly rate for that time.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's complaint against Attorney Frank W. Miller (Dkt. Nos. 38, 48) be **DISMISSED IN ITS ENTIRETY AS COMPLETELY BASELESS AND FRIVOLOUS**, and it is

**RECOMMENDED**, that if this Recommendation is accepted and adopted, plaintiff be given **FIFTEEN (15) DAYS** from the date of any order approving this recommendation within which to show cause why sanctions should not be imposed upon him for the conduct outlined above, and it is further

**ORDERED**, that if this Recommendation is approved, Attorney Miller may within **FIFTEEN (15) DAYS** of the District Judge's order, submit to the court a complete request for attorneys fees relating to the defense of plaintiff's complaint of attorney misconduct.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 6, 2006

Hon. Gustave J. DiBianco
U.S. Magistrate Judge

May 31, 2006

Honorable Gustav J. DiBianco
Magistrate U.S. District Court
Northern District of New York
John F. Hanley Federal Building
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198

    *Re:*

      *Civil No.: 5:05-cv*

Dear Magistrate Judge DiBianco:

    I am counsel           I in the above captioned action. I request that your Chambers conduct a conference to resolve a discovery dispute, in compliance with Local Rule 7.1 (d) (3).

    The nature of the discovery dispute is the defendant's failure to respond in any manner to duly served discovery demands. My office served a set of Interrogatories and a Notice for Discovery and Inspection, together with a notice to take deposition, upon defendant's counsel on March 28, 2006. The responses to the Interrogatories and the Notice for Discovery and Inspection were due on April 27, 2006 and the deposition had been demanded to take place on May 23, 2006. On April 26, 2006, I asked for to identify certain witnesses he alleged to exist but failed to disclose in his Initial Disclosures. Counsel responded on April 26, 2006 by email requesting an extension of time to respond to all outstanding discovery demands, which was granted such that discovery responses were due on May 5, 2006. I had specifically indicated to counsel that it was essential for my client to receive the responses to Interrogatories and the Notice for Discovery and Inspection prior to a hearing was to conduct on the parties' respective motions for preliminary relief. Those hearings were conducted last week, but I have yet to receive any responses to discovery. At the hearing, counsel for Mathews stated, for the first time, that they objected to certain discovery demands for a list of customers. Counsel admitted no request had been made to your Chambers for a protective order.

    On May 22, 2006 I forwarded a letter to counsel for defendant, followed on May 24, 2006 by an email requesting that they state their intentions regarding responses to discovery. I have received no reply. In my email to counsel on May 24, 2006 I indicated

Exhibit 1 (page 1) to Report-Recommendation

that if I did not receive a response on or before Friday, May 26th, I would contact your Chambers to request a conference. I received no reply. On May 26, 2006 I sent a final email indicating again I would request a conference if I did not receive a response. Again, I have received no reply. I have enclosed for your Honor's review copies of the discovery requests, and of all letters and emails noted above.

Therefore, I respectfully submit that Plaintiff has exercised due diligence in attempting to resolve discovery disputes, pursuant to Local Rule 7.1 (d) (1) and (2). Plaintiff respectfully requests that you conduct a discovery conference and render the appropriate Orders to compel responses and award costs.

Respectfully,

Exhibit 1 (page 2) to Report-Recommendation